[No. A129651. First Dist., Div. Five. May 24, 2012.]

FROG CREEK PARTNERS, LLC, Plaintiff, Cross-defendant, and Respondent, v.
VANCE BROWN, INC., Defendant, Cross-complainant, and Appellant.

**COUNSEL**

Sedgwick, Detert, Moran & Arnold, Sedgwick, Gregg N. Dulik; Miller Shakman & Beem and Stuart M Widman for Defendant, Cross-complainant and Appellant.

Ropers, Majeski, Kohn & Bentley, Susan H. Handelman and Terry Anastassiou for Plaintiff, Cross-defendant and Respondent.

OPINION

**SIMONS, Acting P. J.**—Two parties enter into a contract with an arbitration clause and a separate attorney fee provision. A dispute arises, a lawsuit is filed, and the defendant petitions to compel arbitration. Under Civil Code section 1717, if the plaintiff defeats that petition, is it entitled to recover attorney fees, even if the plaintiff ultimately loses the substantive contractual dispute? This court considered an analogous question in *Green v. Mt. Diablo Hospital Dist.* (1989) 207 Cal.App.3d 63 [254 Cal.Rptr. 689] *(Green)*. There, albeit with relatively little discussion, we held that a party's request for Civil Code section 1717 attorney fees for defeating a petition to compel arbitration filed in a pending lawsuit was "premature." *(Green, at pp. 76–77.)* In the present case, we reaffirm *Green*'s holding in light of the relevant legislative history and more recent case law. In particular, we hold that, under Civil Code section 1717, there may only be one prevailing party entitled to attorney fees on a given contract in a given lawsuit.[1] On that basis, we reverse the trial court's fee award, which awarded attorney fees to both parties on the same contract in the same lawsuit. On remand, we direct the court to award appellant Vance Brown, Inc. (Brown), reasonable attorney fees for the proceedings on its first petition to compel arbitration, which need not be in the amount requested by Brown. We also direct the court to award Brown reasonable attorney fees on the present appeal.

BACKGROUND[2]

Brown agreed to build a multimillion dollar home for Jeffrey Drazan, the managing director of a venture capital firm, Sierra Ventures. Drazan formed his own limited liability company, Frog Creek Partners, LLC (Frog Creek), to manage the construction project. Brown began constructing Drazan's home on September 18, 2002, before a written contract had been executed. On September 20, Brown presented Frog Creek with a draft contract that included a dispute resolution provision requiring mediation of all disputes followed, if necessary, by arbitration of all disputes involving $50,000 or less. On September 24, Norman McKay, counsel for Frog Creek, responded with a five-page letter suggesting various changes to the contract, including elimination of the $50,000 cap on disputes subject to arbitration.

---

[1] We are not in this case confronted with a contract involving more than two parties and have not considered how that would affect the application of Civil Code section 1717. (See discussion in pt. IV., *post.*)

[2] The underlying dispute in this matter produced spirited litigation, including two prior appeals to this court: *Frog Creek Partners, LLC v. Vance Brown, Inc.* (July 12, 2006, A111059) (nonpub. opn.) *(Frog Creek I)* and *Frog Creek Partners, LLC v. Vance Brown, Inc.* (Dec. 27, 2007, A116800) (nonpub. opn.) *(Frog Creek II)*. This factual summary is drawn in part from those two prior decisions.

The suggested change to the dispute resolution provision was made by Brown in a subsequent draft of the contract. A number of drafts passed between the parties, and Brown made several other changes at Frog Creek's request. Frog Creek was given a typewritten version of the contract and made a number of handwritten notations and changes, none of which affected the dispute resolution provision. Drazan signed this version of the contract in late 2002. He was not represented by counsel at that time.

Brown's president signed a "clean" version of the typewritten contract that did not contain the handwritten changes that had been made by Frog Creek to its version.[3] The appellate record does not include a single version of the contract containing signatures of representatives of both parties, and the parties have not presented separate but identical signed versions of the contract. The dispute resolution, arbitration, and attorney fee provisions in each party's version of the contract are identical.

Frog Creek filed this suit against Brown seeking damages for breach of contract, conversion, and other causes of action arising out of the construction project. The first amended complaint alleged in relevant part that, in December 2002, Frog Creek and Brown entered into a written construction agreement entitled "Construction Agreement for the Residence at 3 Bridle Lane, Woodside, California" (hereafter, Contract), under which Brown agreed to construct certain improvements on the real property. It further alleged a true and correct copy of the Contract was attached to the first amended complaint as exhibit A. Frog Creek's version of the Contract, the version with the handwritten notations, was the document attached to the first amended complaint as exhibit A.

In March 2005, Brown filed a petition to compel arbitration under Code of Civil Procedure section 1281.2, attaching two typewritten contract pages specifically addressing dispute resolution.[4] At the same time, Brown filed a cross-complaint asserting causes of action for breach of contract, quantum

---

[3] In his declaration opposing the March 2005 petition to compel arbitration, Drazan described the primary difference between the two versions of the contract as follows: Brown's representatives stated to Drazan that Brown disputed "the hand-written changes" Drazan made to the contract and claimed "those changes are not binding on them. Those hand-written changes include an increase in the landscaping allowance by $248,914, which is equal to approximately 32 percent of [Brown's] total 'Contractor's Fee' provided for in paragraph 4.1" of the contract.

[4] A party may file a petition to enforce an arbitration agreement as an independent lawsuit if there is no pending lawsuit; otherwise, the party must file the petition in the pending lawsuit. (Code Civ. Proc., §§ 1281.2, 1292.4; see pt. II.A., *post*.) In the present case, Brown styled its petition as a "motion" to compel arbitration. Similarly, some cases use the terms "petition" and "motion" interchangeably to refer to a section 1281.2 petition filed within an existing lawsuit. (See, e.g., *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 46, 77 [125 Cal.Rptr.3d 469] (*Kors*).) That is not inaccurate, but it may impair the analysis in other contexts. (See, e.g.,

meruit, and foreclosure of its mechanic's lien. No full copy of the Contract was attached to the cross-complaint; instead, the cross-complaint attached only the same two-page dispute resolution provision attached to the petition to compel arbitration. Ultimately, Brown produced its version of the Contract in support of its petition to compel arbitration, i.e., the version that was signed only by Brown's president and did not contain Frog Creek's interlineations. The trial court denied the petition to compel.

Brown appealed and, in July 2006, this court affirmed the trial court's order in *Frog Creek I*. We reasoned that Brown's petition was based on the arbitration clause contained in Brown's version of the Contract, which Frog Creek had never signed and to which no mutual assent could be found. We specifically noted that we took no position on whether Frog Creek's version of the Contract was a binding agreement or whether the parties were required to arbitrate under the Contract.

Following issuance of this court's opinion in *Frog Creek I*, Brown filed a renewed petition to compel arbitration based on Frog Creek's version of the Contract, which Brown stipulated was "the controlling agreement" between the parties regarding the construction of the home. Frog Creek opposed the petition, arguing that it was not properly before the trial court because there had been no changed circumstances as required by Code of Civil Procedure section 1008, that there was no valid agreement to arbitrate, and that if an arbitration agreement existed it was unconscionable. The trial court denied the petition, but, in December 2007, this court reversed in *Frog Creek II* and directed the trial court to stay the proceedings and send the dispute to arbitration.

Following 50 days of arbitration hearings, an American Arbitration Association panel issued a 65-page decision awarding Brown damages against Frog Creek of $1,905,902.90, plus $2,517,687.31 in attorney fees for the arbitration proceeding and $666,422.78 in costs. The arbitrators declined to rule on whether attorney fees and costs might be awarded for litigation activity before the arbitration. Frog Creek paid the arbitration award in February 2010, and the trial court entered judgment on it on April 7, 2010.

---

*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 688 [133 Cal.Rptr.3d 585] (*Metis*) [although a petition to compel is heard "*in the manner of* a motion," it is in essence a suit in equity seeking specific performance of a contract].)

In this decision, we refer to all Code of Civil Procedure section 1281.2 petitions as "petitions," but we do draw an analytical distinction for purposes of Civil Code section 1717 between petitions filed within an existing lawsuit, such as Brown's petition, and those that commence an independent lawsuit.

On May 17, 2010, Brown filed a motion for attorney fees and costs pursuant to Civil Code section 1717, seeking $998,260 in prearbitration and postarbitration costs and fees, including attorney fees for its unsuccessful March 2005 petition to compel arbitration and the *Frog Creek I* appeal. On May 20, Frog Creek filed a motion for $229,510.75 in attorney fees and costs pursuant to section 1717 in connection with its successful opposition to that petition and the *Frog Creek I* appeal. Frog Creek argued it was the "prevailing party" on Brown's unsuccessful effort to compel arbitration under Brown's version of the Contract.

In July 2010, the trial court entered its order on attorney fees. The court determined that Brown was the prevailing party in the arbitration and awarded Brown prearbitration attorney fees of $692,293 and postarbitration fees of $96,000. The court determined that Frog Creek was the prevailing party on the initial petition to arbitrate and awarded Frog Creek attorney fees of $125,000, including fees for the *Frog Creek I* appeal. The court denied Brown the $128,000 in attorney fees that Brown had sought for those proceedings. The net award of prearbitration and postarbitration attorney fees to Brown was $663,293. This appeal followed.

## DISCUSSION

Brown contends the trial court erred in granting Frog Creek attorney fees in the amount of $125,000 for successfully opposing Brown's March 2005 petition to compel arbitration and prevailing in the *Frog Creek I* appeal. Brown also makes the related contention the court erred in denying Brown attorney fees in the amount of $128,000 for those proceedings. " 'On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law.' [Citation.]" (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 923 [65 Cal.Rptr.3d 242] (*Butler-Rupp*).)

Civil Code section 1717 governs awards of attorney fees based on a contract and authorizes an award of attorney fees "[i]n any action on a contract" to "the party prevailing on the contract" if the contract provides for an award of attorney fees. (§ 1717, subd. (a).)[5] "[T]he party prevailing on the

---

[5] Civil Code section 1717, subdivision (a) provides, in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Both versions of the Contract at issue here provide for attorney fees, and each version states: "In the event any claim or arbitration proceeding is brought under Paragraph 25 hereinafter by any party hereto in order to enforce this [Contract], or any terms or provisions thereof, the prevailing party shall be entitled to recovery of its reasonable attorneys' fees and costs in addition to all other relief to which that party may be entitled."

contract shall be the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) The legislative history of section 1717 "generally reflects a legislative intent to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions and to eliminate distinctions based on whether recovery was authorized by statute or by contract." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 616 [71 Cal.Rptr.2d 830, 951 P.2d 399] (*Santisas*).) The determination of which party prevailed in an action on a contract is within the discretion of the trial court. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804] (*Hsu*).)

The critical issue of statutory interpretation in the present case is whether Frog Creek's success in defeating Brown's March 2005 petition to compel arbitration under Code of Civil Procedure section 1281.2 made Frog Creek "the party who recovered a greater relief in the action on the contract" within the meaning of Civil Code section 1717, such that the trial court could award Frog Creek fees for prevailing on the petition and also award Brown fees for prevailing on the underlying contract claims. Frog Creek argues the petition to compel arbitration was a distinct "action on a contract" within the meaning of Civil Code section 1717, but Brown contends the petition and subsequent appeal were "really just a forum fight" that could not provide a basis for a separate attorney fee award.

■ " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]' " [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

As noted previously and described in greater detail below (pt. II.B.), in *Green, supra*, 207 Cal.App.3d at pages 76–77, this court held that a party was not entitled to attorney fees under Civil Code section 1717 for defeating a petition to compel arbitration filed in a pending lawsuit. *Green* followed the decision in *Lachkar v. Lachkar* (1986) 182 Cal.App.3d 641, 648–649 [227 Cal.Rptr. 501] (*Lachkar*), which held that a party was not entitled to attorney

fees for prevailing on a petition to compel arbitration, where the arbitration had not yet taken place. However, because of subsequent amendments to section 1717, neither *Green* nor *Lachkar* discussed the specific language at issue in the present case, including the definition of "party prevailing on the contract" as "the party who recovered a greater relief in the action on the contract." Moreover, recent case law has suggested that these changes in the statutory language have superseded *Lachkar* (and, by implication, *Green*). Thus, we reexamine the foundation for the holding in *Green* in light of the legislative history and more recent case law.

In this decision, we first examine the evolution of the definition of prevailing party in Civil Code section 1717, including *Lachkar*'s analysis of aspects of the legislative history. Second, we address cases that have considered requests for attorney fees under section 1717 in the context of disputes over arbitrability, including this court's decision in *Green*. Third, we discuss cases from outside the arbitration context, to the extent they shed light on whether there can be more than one prevailing party on a given contract in a given lawsuit. Fourth, we distinguish the present case from those cases in which courts have awarded fees to multiple prevailing parties on multiple contracts involved in a single lawsuit. Finally, we address *Acosta v. Kerrigan* (2007) 150 Cal.App.4th 1124 [58 Cal.Rptr.3d 865] (*Acosta*), which held that a party was entitled to attorney fees for prevailing on a petition to compel arbitration based on specific contractual language, rather than under section 1717. We disagree with the rationale of *Acosta* and, in any event, find it inapplicable in the present case. Ultimately, we conclude that Brown, rather than Frog Creek, was entitled to fees under section 1717 for the proceedings on the March 2005 petition. We reverse the fee award to Frog Creek and remand for the trial court to award reasonable fees to Brown for those proceedings and the present appeal.

I. *The Evolution of the Definition of "Prevailing Party" in Civil Code Section 1717 Supports a Conclusion That There May Only Be One Prevailing Party on a Contract in a Given Lawsuit*

We begin by examining the evolution of the definition of prevailing party in Civil Code section 1717. The court in *Lachkar, supra,* 182 Cal.App.3d at page 648, summarized part of the relevant legislative history as follows: "As originally enacted, section 1717 defined the prevailing party as the party in whose favor final judgment was rendered. The 1981 Legislature changed the definition of prevailing party such that except for the situations set out in subdivision (b)(2) of the section, the prevailing party is the party entitled to costs. The amendment appears to be a direct legislative response to *Samuels v. Sabih* (1976) 62 Cal.App.3d 335, 340 [133 Cal.Rptr. 74], which held a

dismissal for want of prosecution was not a final judgment within the meaning of section 1717. [Citation.]" (See also *Hsu, supra,* 9 Cal.4th at pp. 872–873.)

The *Lachkar* court was confronted with the question of whether a party could be awarded attorney fees for prevailing on an independent petition to compel arbitration, even though the arbitration had not yet taken place. (*Lachkar, supra,* 182 Cal.App.3d at pp. 648–649.) The court concluded that the change in the Civil Code section 1717 definition of "prevailing party"— from the party in whose favor final judgment was rendered to the party entitled to costs—did not authorize the trial court to award fees to a party who succeeded in obtaining an order compelling contractual arbitration; the fee award could only be made after the underlying contract claims were resolved at arbitration. (*Lachkar,* at pp. 648–649.) The court reasoned: "Despite the amendment, the statute still requires that there be some final disposition of the rights of the parties. . . . [T]he 1981 amendment to section 1717 'did not revise the requirement that in order to be entitled to a fee award, one must be "the prevailing party." Nor does the change in the definition of "the prevailing party" suggest that there may be more than one prevailing side ultimately in a given lawsuit. The language authorizing determination of who is the prevailing party "whether or not the suit proceeds to final judgment" . . . does not imply that the suit need not be finally disposed of. . . . By providing that *"the* prevailing party shall be *the* party who is entitled to recover *costs of suit"* . . . the requirement that there be some reckoning of the net success of the respective parties is preserved. That net success, of course, cannot be ascertained until the final termination of the suit.' " (*Ibid.*)

In 1987, the Legislature enacted the present language of Civil Code section 1717. It amended subdivision (a), to provide a fee award to "the party prevailing on the contract" (Stats. 1987, ch. 1080, § 1, p. 3648), rather than simply to "the prevailing party" (Stats. 1968, ch. 266, § 1, p. 578). It also amended subdivision (b), to define "the party prevailing on the contract" as "the party who recovered a greater relief in the action on the contract." (Stats. 1987, ch. 1080, § 1, p. 3648; see also *Hsu, supra,* 9 Cal.4th at pp. 873–874.) If we accept *Lachkar's* analysis of the prior amendment, the question becomes whether the further evolution in the statutory language—from defining "the prevailing party" as the party "entitled to recover costs" to defining "the party prevailing on the contract" as the party who recovered greater relief in the action on the contract—reflects the Legislature's intent that a single lawsuit

can have multiple prevailing parties on distinct contractual claims involving the same contract. It does not.[6]

The legislative history of Senate Bill No. 184 (1987–1988 Reg. Sess.) (hereafter, Senate Bill No. 184), which amended Civil Code section 1717 to add the present language, indicates that the bill was a "clean-up bill" for Senate Bill No. 654 (1985–1986 Reg. Sess.) (hereafter, Senate Bill No. 654). (Sen. Com. on Judiciary, Background Information on Sen. Bill No. 184 [undated].) An Assembly Committee on Judiciary analysis stated that Senate Bill No. 654 "revised the law relating to the recovery of allowable costs in civil cases by, among other things, defining 'prevailing party' . . . . Most of the provisions in [Senate Bill No. 184] have been proposed by the Judicial Council and the California Judges Association and are intended to clarify the operation of the provisions" of Senate Bill No. 654. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 184, as amended July 2, 1987, p. 2.) As relevant in the present case, the analysis indicated that Senate Bill No. 184 "[r]evises the definition of prevailing party for the purpose of awarding attorneys' fees in contract actions to conform to the requirements of" Senate Bill No. 654. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 184, as amended July 2, 1987, p. 1.)

---

[6] The term "action" is not defined in Civil Code section 1717 or elsewhere in the Civil Code in provisions related to Civil Code section 1717. "Action" is defined in Code of Civil Procedure section 22, which provides: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." That definition of "action" has been applied to various statutory schemes. (See, e.g., *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 76 [109 Cal.Rptr.2d 1, 26 P.3d 332] (*Cornette*); *Loeb v. Record* (2008) 162 Cal.App.4th 431, 446 [75 Cal.Rptr.3d 551].) It appears that courts generally treat the term "action," as defined by Code of Civil Procedure section 22, as referring to the whole of a lawsuit rather than to discrete proceedings within a lawsuit. For example, in *Cornette*, at page 76, the court concluded that, in determining whether there was a right to a jury trial, a bifurcated trial regarding a defense was " 'part and parcel of the pending action' " because it was not a proceeding " ' "commenced independently of the pending action." ' " (See also *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 909 [109 Cal.Rptr.3d 96] [" 'action' as distinguished from 'motion,' means an independent action to set aside a support order"]; *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 672–674 [17 Cal.Rptr.3d 427] ["action" refers to the lawsuit as a whole and not to a demurrer filed in the suit]; *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 [263 Cal.Rptr. 195] ["An action is not limited to the complaint but refers to the entire judicial proceeding at least through judgment and is generally considered synonymous with 'suit.' [Citation.]"].) Code of Civil Procedure section 22, therefore, does not support Frog Creek's argument that its petition to compel was an "action on the contract" independent of the other contract claims in the lawsuit. In any event, we believe it is more appropriate to focus on the ultimate issue of whether the Legislature intended, in adopting the present language in Civil Code section 1717, to authorize attorney fee awards to multiple prevailing parties on a single contract in a single lawsuit.

Accordingly, in order to determine whether a party who prevails on a petition to compel arbitration is a "party prevailing on the contract" for the purpose of Civil Code section 1717, subdivision (b), it is necessary to determine what aspect of Senate Bill No. 654 the Legislature intended to "conform to" in amending Civil Code section 1717 in Senate Bill No. 184. Senate Bill No. 654 addressed the procedures by which prevailing parties recover costs in civil actions, because existing statutes did not "fully explain the concept of the 'prevailing party' " or specify what items are recoverable costs. (Assem. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 654, as amended July 8, 1986, p. 1.) Senate Bill No. 654 was proposed by the California Judges Association to "eliminate confusion" (Assem. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 654, as amended July 8, 1986, p. 2) and "simplify" the process for cost awards, "thereby relieving court congestion and easing judicial workload" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 654, as amended Apr. 15, 1985, p. 1).

Among other things, Senate Bill No. 654 repealed the former version and enacted a new version of Code of Civil Procedure section 1032, including a revised definition of "prevailing party." (Stats. 1986, ch. 377, §§ 5, 6, p. 1578.) The former version of section 1032 provided for a costs award to the plaintiff or defendant "upon a judgment in his favor."[7] The Senate Bill No. 654 amendments to section 1032 provided that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding" (§ 1032, subd. (b)), and defined "prevailing party" as including, in part, "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant" (§ 1032, subd. (a)(4)). (Stats. 1986, ch. 377, § 6, p. 1578; see also *Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1375–1376 [29 Cal.Rptr.3d 306].)

As enacted, Senate Bill No. 654 also included the precise changes to Civil Code section 1717 at issue in the present case, including subdivision (b)(1), the definition of "the party prevailing on the contract." (Stats. 1986, ch. 377, § 1, p. 1577.) Those changes were added to Senate Bill No. 654 in March and April 1986. The legislative history is silent about the proposed changes to Civil Code section 1717, except for the statement that Senate Bill No. 654 "Makes conforming changes in the law relating to the award of attorneys' fees in contract actions by revising the definition of 'prevailing party.' "

---

[7] Code of Civil Procedure former section 1032 provided that "costs are allowed of course: [¶] (a) [t]o plaintiff upon a judgment in his favor: . . . in an action for the recovery of money or damages; . . . [¶] (b) [t]o the defendant upon a judgment in his favor in special proceedings and in the actions mentioned in subdivision (a) of this section, or as to whom the action is dismissed. . . ." (Stats. 1957, ch. 1172, § 1, p. 2464.)

(Assem. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 654, as amended July 8, 1986, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 654, as amended June 5, 1986, at p. 2.) Ultimately, the Senate Bill No. 654 changes to Civil Code section 1717 were superseded by a later chaptered enactment, Assembly Bill No. 1034 (1985–1986 Reg. Sess.) (Stats. 1986, ch. 785, § 1, p. 2653), which amended Civil Code section 1717 in an aspect not relevant to the present case. (See Gov. Code, § 9605 [providing that, when a section is affected by two or more acts at the same session of the Legislature, the later chaptered enactment supersedes the earlier chaptered enactment].) Subsequently, Senate Bill No. 184 reenacted the amendments to Civil Code section 1717 that had previously been a part of Senate Bill No. 654.

■ Viewed in light of Senate Bill No. 654, it appears that the Senate Bill No. 184 amendments to Civil Code section 1717 were intended to conform to the change to Code of Civil Procedure section 1032 by clarifying the identity of the prevailing party in a contract action for purposes of a Civil Code section 1717 attorney fee award. Thus, the Civil Code section 1717, subdivision (b)(1) language specifying that the party who recovered "greater relief in the action on the contract" is the prevailing party is parallel to the "net monetary recovery" language in Code of Civil Procedure section 1032 and appears to address a situation where there are competing contract claims. Under this analysis, the change in the definition of the "prevailing party" does not suggest that in a given lawsuit there may be multiple prevailing parties on a single contract; instead, the contractual relief obtained by the parties must be compared, and the party obtaining the greater relief is the party who prevailed in the contract action.

It appears that the Legislature changed the phrase "the prevailing party" to "the party prevailing on the contract" in order to address a situation where a lawsuit involves both contract and noncontract claims. That may be inferred from the fact that in Senate Bill No. 184 the Legislature also added subdivision (c) to Civil Code section 1717. (Stats. 1987, ch. 1080, § 1, p. 3648.) Subdivision (c) provides that, "[i]n an action which seeks relief in addition to that based on a contract," amounts awarded as attorney fees to the party prevailing on the contract "shall be deducted from any damages awarded in favor" of the other party on other, noncontract causes of action.[8] If the amount awarded as attorney fees to the prevailing party on the contract action exceeds the damages awarded to the other party on other causes of

---

[8] Civil Code section 1717, subdivision (c) provides: "In an action which seeks relief in addition to that based on a contract, if the party prevailing on the contract has damages awarded against it on causes of action not on the contract, the amounts awarded to the party prevailing on the contract under this section shall be deducted from any damages awarded in favor of the party who did not prevail on the contract. If the amount awarded under this section exceeds the amount of damages awarded the party not prevailing on the contract, the net

action, "the net amount shall be awarded the party prevailing on the contract and judgment may be entered in favor of the party prevailing on the contract for that net amount." (Civ. Code, § 1717, subd. (c).) Viewed in light of subdivision (c), it appears that the use of the identical language, "the party prevailing on the contract," in subdivisions (a) and (b) of Civil Code section 1717 is intended to draw a distinction between the party prevailing on the contract claim or claims and the party prevailing on any noncontract claims. In *Hsu, supra,* 9 Cal.4th at pages 873–874, the California Supreme Court, which considered an issue relating to a different provision adopted by Senate Bill No. 184, viewed the amended language in this fashion, stating, "The Legislature replaced the term 'prevailing party' with the term 'party prevailing on the contract,' evidently to emphasize that the determination of prevailing party for purposes of contractual attorney fees was to be made without reference to the success or failure of noncontract claims."[9]

Interestingly, Senate Bill No. 184 also added section 1281.7 to the Code of Civil Procedure, providing that a Code of Civil Procedure section 1281.2 petition "may be filed in lieu of filing an answer to a complaint." (Stats. 1987, ch. 1080, § 9, p. 3657.) An Assembly committee analysis explains, "This bill also permits the use of a motion to compel arbitration pursuant to a contract rather than requiring the filing of an answer or other pleading *in the action.* The provision was proposed by the Judicial Council which states that it is intended to provide an automatic stay, thereby 'obviating the need to get a stay or file an answer pending determination of the enforceability of the contract provision mandating arbitration.' " (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 184, as amended July 2, 1987, p. 2, italics added;

---

amount shall be awarded the party prevailing on the contract and judgment may be entered in favor of the party prevailing on the contract for that net amount."

[9] An analogous situation confronted the court in *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949 [17 Cal.Rptr.2d 242] (*Myers*). There, a general contractor, Myers, prevailed in a breach of contract claim against Interface and obtained greater overall relief in the lawsuit, although Interface obtained setoffs based on other contracts assigned to Interface by subcontractors. (*Id.* at p. 975, fn. 21.) The Court of Appeal rejected Myers's claim that it was entitled to attorney fees because it prevailed in the lawsuit, even though only two of the assigned subcontracts had attorney fee provisions. (*Ibid.*) The court reasoned, "Myers seems to confuse the notion of prevailing in the lawsuit with that of prevailing 'on the contract,' which is required to obtain an attorney fee award under Civil Code section 1717. In this case, Myers prevailed on its action on the Construction Contract with Interface. That contract did not, however, contain an attorney fee provision. Interface prevailed by way of setoff in its actions against Myers on the subcontracts. The fact that Myers obtained a higher net recovery in the lawsuit is irrelevant to the determination of which party prevailed on any particular action on a contract." (*Myers,* at p. 975, fn. 21; see also *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491 [54 Cal.Rptr.2d 888] (*Arntz*) ["The trial court misunderstood its obligation to determine the prevailing party on the contract, rather than in the entire action that concerned independent contracts."].)

see also *id.* at p. 1.) The wording of the committee analysis reflects an understanding that such a motion would be part of the underlying action, rather than an action on the contract itself.

 In summary, there is no basis in the legislative history to conclude that, in amending Civil Code section 1717 in 1987, the Legislature intended to deviate from the prior rule described in *Lachkar, supra,* 182 Cal.App.3d at page 649, that in any given lawsuit there can only be one prevailing party on a single contract for the purposes of an entitlement to attorney fees. (See *People v. Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288] ["the Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes ' "in the light of such decisions as have a direct bearing upon them." ' [Citations.]"].) Instead, the legislative history suggests that the Legislature intended to provide guidance to the courts on the determination of the identity of the prevailing party where there are multiple contract claims or contract and noncontract claims. Section 1717 as amended in 1987, makes it clear that the party who obtains greater relief on the contract action is the prevailing party entitled to attorney fees under section 1717, regardless of whether another party also obtained lesser relief on the contract or greater relief on noncontractual claims.

II. *Cases Considering Civil Code Section 1717 Attorney Fee Requests Related to Disputes over Arbitrability Support a Conclusion That Frog Creek Is Not Entitled to Attorney Fees for Defeating Brown's Petition to Compel*

Prior cases considering Civil Code section 1717 fee requests related to disputes over arbitrability largely do not focus on the statutory language or legislative history. However, they confirm that attorney fees should be awarded to the party who prevails on a petition to compel arbitration only when the resolution of that petition terminates the entire "action on the contract."

A. *Code of Civil Procedure Section 1281.2 Petitions to Compel Arbitration*

 Brown's petition to compel arbitration was brought under Code of Civil Procedure section 1281.2,[10] which provides that, with certain exceptions not applicable here, "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order

---

[10] All further undesignated section references are to the Code of Civil Procedure.

the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ." "A petition to compel arbitration ' "is in essence a suit in equity to compel specific performance of a contract." ' [Citations.]" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 411 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (*Rosenthal*); see also *Trubowitch v. Riverbank Canning Co.* (1947) 30 Cal.2d 335, 347 [182 P.2d 182] (*Trubowitch*);[11] *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795 [13 Cal.Rptr.2d 678] (*Brock*); *Atlas Plastering, Inc. v. Superior Court* (1977) 72 Cal.App.3d 63, 69 [140 Cal.Rptr. 59].)

▮ In the absence of any existing contract action, a section 1281.2 petition may be filed independently, in which case it commences an independent lawsuit to enforce the agreement to arbitrate. (§ 1281.2; *Brock, supra*, 10 Cal.App.4th at p. 1799, fn. 7.) As the *Brock* court explained, "The right to file a petition to compel arbitration rests on the agreement of the parties and upon the arbitration statutes, not on the existence of a legal action." (*Brock*, at p. 1799, fn. 7.) However, where, as in the present case, there is an existing lawsuit involving the same underlying contractual dispute, the petition to compel arbitration *must*, under section 1292.4, be filed within the existing suit. Section 1292.4 provides, "If a controversy referable to arbitration under an alleged agreement is involved in an action or proceeding pending in a superior court, a petition for an order to arbitrate shall be filed in such action or proceeding." *Brock* describes section 1292.4 as a "venue statute" and "procedural requirement." (*Brock*, at p. 1799, fn. 7.) ▮ The petition may be filed "in lieu of filing an answer to a complaint." (§ 1281.7.)

### B. *The* Lachkar, Otay *and* Green *Decisions*

*Lachkar, supra*, 182 Cal.App.3d at page 649, held that when a petition to compel arbitration filed in an independent lawsuit is *granted*, the court should not award attorney fees under Civil Code section 1717 to the petitioner. In *Lachkar*, disputes arose between parties to a contract of sale of a restaurant and lounge, and one of the parties filed a petition to compel arbitration under section 1281.2. (*Lachkar*, at pp. 643–644.) The trial court granted the petition and awarded attorney fees to the party who filed the petition. (*Id.* at p. 645.) The Court of Appeal reversed the award of fees because "[i]n ordering arbitration pursuant to . . . section 1281.2, the court was not determining the substantive rights of the parties. Because there was no 'reckoning of the net success' of the parties, there was no prevailing party under the parties' agreements nor pursuant to Civil Code section 1717." (*Id.* at p. 649.)

---

[11] The *Trubowitch* decision refers to former section 1282 (Stats. 1927, ch. 225, § 3, p. 404, repealed by Stats. 1961, ch. 461, § 1, p. 1540) rather than section 1281.2. At the time of the *Trubowitch* decision, section 1281.2 had not been enacted, but former section 1282 authorized the filing of a petition to compel arbitration. (*Trubowitch, supra*, 30 Cal.2d at p. 347.)

Notably, where, as in *Lachkar*, the petitioner succeeds on an independent petition to arbitrate, that lawsuit is not finally resolved. Under section 1292.6,[12] the trial court retains "a separate, limited jurisdiction over the contractual arbitration which was the subject of the section 1281.2 petition." (*Brock, supra*, 10 Cal.App.4th at p. 1796.) For example, any subsequent petition to confirm the arbitration award is subject to that court's jurisdiction. (*Valsan Partners Limited Partnership v. Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 820 [30 Cal.Rptr.2d 785].)

On the other hand, when a party *defeats* an independent petition to compel arbitration, the action is terminated and the prevailing party on the petition is entitled to fees under Civil Code section 1717. In *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796 [70 Cal.Rptr.3d 434] (*Otay*), before any lawsuit was filed on the merits of the contractual dispute, Otay filed a petition to compel contractual arbitration. (*Id.* at p. 800.) The trial court denied the petition, concluding that the underlying claims arose under another contract that permitted litigation of the claims. (*Id.* at p. 801.) The trial court then denied Expressway's motion for attorney fees, concluding that it was not a prevailing party because the parties contemplated additional litigation. (*Ibid.*)

The Court of Appeal reversed, concluding that "Otay's petition to compel arbitration . . . was an 'action on the contract' for purposes of Civil Code section 1717. Expressway obtained a ' "simple, unqualified win" ' on the only contract claim at issue in the action—whether to compel arbitration under the Coordination Agreement. [Citation.] Accordingly, Expressway was the prevailing party as a matter of law because it defeated the only contract claim before the trial court in this discrete special proceeding. [Citation.]" (*Otay, supra*, 158 Cal.App.4th at p. 807.) The Court of Appeal rejected Otay's argument that *Lachkar* and other cases supported "the proposition that a procedural victory does not qualify as the type of win for a mandatory attorney fee award." (*Otay*, at p. 807.) The court reasoned that those cases "did not involve the final resolution of a discrete legal proceeding. [Citations.] Significantly, the merits of the contract claims under the . . . [c]ontract that Otay sought to send to arbitration were not at issue in the court proceedings to compel arbitration and the fact that the parties will probably pursue these claims in another action does not lessen Expressway's victory in this discrete legal proceeding." (*Id.* at pp. 807–808.) The court stated its holding as follows: "Where an action is brought solely to compel arbitration of contractual disputes between the parties, . . . a party who succeeds in

---

[12] Section 1292.6 provides, "After a petition has been filed under this title, the court in which such petition was filed retains jurisdiction to determine any subsequent petition involving the same agreement to arbitrate and the same controversy, and any such subsequent petition shall be filed in the same proceeding."

obtaining an order denying the petition to compel arbitration is a prevailing party in the action on the contract even though the merits of the parties' underlying contractual disputes have not yet been resolved . . . ." (*Id.* at p. 799; see also *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 786 [191 Cal.Rptr. 8, 661 P.2d 1088] [concluding, under a prior version of Civ. Code, § 1717, that a party who defeated a petition to compel arbitration could move for an award of attorney fees]; *Cole v. BT & G, Inc.* (1983) 141 Cal.App.3d 995, 999–1000 [190 Cal.Rptr. 690].)[13]

The court in *Turner v. Schultz* (2009) 175 Cal.App.4th 974, 976, 982–983 [96 Cal.Rptr.3d 659] (*Turner*), followed *Otay* despite its very different procedural posture. In *Turner*, following his termination from a company in which he was a shareholder, the plaintiff, Turner, filed a lawsuit in the Contra Costa Superior Court alleging the defendants made false representations to induce Turner to enter into an agreement establishing a formula for buying out the shares of terminated shareholders. (*Turner*, at p. 977.) Turner also filed a *second* lawsuit in the San Francisco Superior Court, which was the subject of the *Turner* appeal. (*Id.* at p. 978.) In the second lawsuit, Turner sought a declaration that the defendants could not proceed with contractual arbitration and an injunction requiring the American Arbitration Association to stay its proceedings. (*Ibid.*) The trial court entered judgment in the defendants' favor and awarded the defendants attorney fees. (*Id.* at pp. 978–979.)

The *Turner* court affirmed. It distinguished *Lachkar* and *Green* and reasoned that, although there was no resolution of the underlying contract claims (which would be resolved in arbitration), a fee award was appropriate "in the

---

[13] *Estate of Drummond* (2007) 149 Cal.App.4th 46 [56 Cal.Rptr.3d 691] (*Drummond*), which did not involve a petition to compel arbitration, is somewhat in tension with *Otay*, because the *Drummond* court denied attorney fees to a party who defeated an independent petition asserting a contract claim. *Drummond* involved a dispute between an attorney and his former clients over fees earned in a probate matter. (*Drummond*, at pp. 48–49.) The attorney filed a petition in the probate court seeking fees he claimed he was owed under his legal services contract with the former clients. (*Ibid.*) The petition was dismissed for violation of the compulsory cross-complaint rule because the former clients had already filed a separate civil action against the attorney. (*Ibid.*) The *Drummond* court concluded that the former clients were not entitled to an award of attorney fees under Civil Code section 1717 for obtaining dismissal of the probate petition, because the merits of the contract claims remained to be resolved in the civil action. (*Drummond*, at p. 53.) *Drummond*'s rationale appears to be that the dismissal was indisputably only an interim stage in the litigation and it was obtained on "purely procedural grounds" that did not involve a victory on any discrete contractual claim. (*Ibid.*; see *Otay, supra,* 158 Cal.App.4th at p. 807 [stating that, in *Drummond*, "dismissal of probate petition determined nothing on the contract and simply moved action to another forum"]; but see *Profit Concepts Management, Inc. v. Griffith* (2008) 162 Cal.App.4th 950 [76 Cal.Rptr.3d 396] (*Profit Concepts*) [party who successfully moved to quash service of summons for lack of personal jurisdiction is prevailing party under Civ. Code, § 1717]; *PNEC Corp. v. Meyer* (2010) 190 Cal.App.4th 66, 72–73 [118 Cal.Rptr.3d 730] [comparing *Drummond* and *Profit Concepts*].)

particular procedural context of this case" because "the only issue before the court—whether the arbitration should be allowed to proceed—was resolved in defendants' favor in this discrete legal proceeding." (*Turner, supra*, 175 Cal.App.4th at p. 983; see also *ibid.* ["The fees at issue were incurred in connection with an independent complaint for declaratory and injunctive relief."]; *id.* at p. 984 ["None of the other cases Turner cites persuades us otherwise, as they *each involve an interim ruling, where further proceedings in the same litigation were contemplated,* rather than discrete legal proceedings." (italics added)]; *Otay, supra*, 158 Cal.App.4th at p. 807 [distinguishing *Lachkar* and other cases on the same basis].)[14]

■ *Green, supra*, 207 Cal.App.3d 63, is procedurally identical to our case, and its holding is consistent with *Lachkar*, *Otay*, and *Turner*: defeating a petition to compel arbitration filed in a pending contract action does not justify a grant of fees under Civil Code section 1717 where the merits of the contract claims remain pending in that action. In *Green*, a group of taxpayers filed a complaint for declaratory relief, seeking a determination that an employment termination agreement between a hospital and its chief executive officer was void. (*Green*, at pp. 67–68.) The employee filed a petition to compel arbitration of the complaint under section 1281.2, which the hospital apparently opposed. (*Green*, at pp. 69, 76.) The trial court denied the petition and also denied the hospital's request for contractual attorney fees as the prevailing party on the petition. (*Ibid.*) On appeal, this court affirmed, holding that the request for fees was "premature" (*id.* at p. 77) because, "[i]n this action, the trial court has not reached the merits of the case. The trial court simply ruled that [the t]axpayers' action for declaratory relief and Green's breach of contract claim against the [h]ospital [d]istrict are subject to judicial determination of whether or not the agreement is illegal. The trial court, therefore, correctly concluded that there has been no final determination of the rights of the parties and properly denied [the h]ospital [d]istrict's request for attorney fees" (*id.* at p. 76). (See *Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 516 [28 Cal.Rptr.3d 584] [distinguishing *Green* on the basis that "no claim of either party remains before the court or otherwise subject to judicial determination . . ."].)[15]

---

[14] *Turner* is consistent with our interpretation of Civil Code section 1717: there may be only one prevailing party entitled to attorney fees on a given contract in a given lawsuit. However, in light of *Turner*'s somewhat unusual procedural posture, in which a pending lawsuit addressed the substantive contractual claims involved in the independent action, we express no opinion on the court's conclusion that a fee award was proper in the circumstances of that case.

[15] Although both *Lachkar* and *Green* involved interim requests for attorney fees, neither case suggested there ultimately could be more than one Civil Code section 1717 prevailing party. *Lachkar* expressly stated the contrary. (*Lachkar, supra*, 182 Cal.App.3d at p. 649.) *Green*

## C. *The Decision in* Kors

Frog Creek correctly argues *Kors, supra,* 195 Cal.App.4th 40, supports an award of attorney fees for prevailing on a petition to compel filed within a lawsuit, but we respectfully disagree with the reasoning of that case. *Kors* involved a fee dispute between a law firm (BWM) and a former client (Kors). (*Id.* at p. 46.) After Kors refused to pay the full amount billed her, BWM sued her for breach of the fee agreement. (*Ibid.*) Kors filed a petition to compel arbitration under the arbitration clause in the fee agreement and section 1281.2, and the trial court granted the petition. (*Kors,* at pp. 46, 55.) BWM prevailed in the arbitration and petitioned the trial court to confirm the award; Kors moved to vacate the award due to the chief arbitrator's failure to disclose certain matters. (*Id.* at p. 46.) The Court of Appeal reversed the trial court's order confirming the arbitration award and directed the trial court to grant Kors's motion to vacate the award. (*Id.* at p. 80.) More significantly for our case, the Court of Appeal directed the trial court to award Kors "fees reasonably incurred in advancing the merits of" her petition to compel arbitration "in the trial court and upon this appeal." (*Ibid.*; see also *id.* at pp. 47–48.) In its analysis of the attorney fee issue,[16] *Kors* stated that the decisions in *Otay* and *Turner* supported the proposition that Kors could obtain a fee award for prevailing on the petition to compel arbitration. (*Kors,* at pp. 76–78.) We disagree; it was critical in those cases that the decisions on arbitrability occurred in the context of wholly independent legal proceedings that resolved "the only issue before the court—whether the arbitration should be allowed to proceed." (*Turner, supra,* 175 Cal.App.4th at p. 983; see also *Otay, supra,* 158 Cal.App.4th at p. 807.) In contrast, the petition to compel arbitration in *Kors* was filed within the lawsuit brought by BWM, and, like Frog Creek's victory here, Kors's victory on the arbitration petition did not resolve the underlying suit. (*Kors,* at p. 50.)

Notably, certain language in *Kors* appears to suggest that *Lachkar's* holding that a party is not entitled to Civil Code section 1717 attorney fees for prevailing on a petition to compel is no longer valid due to the subsequent changes in the statutory language. As we discussed previously, *Turner* distinguished *Lachkar* on the basis that, in *Turner,* the party prevailing on the

---

suggested that the hospital could recover fees on the petition only if it ultimately prevailed in the contract action. (*Green, supra,* 207 Cal.App.3d at p. 77.)

[16] In granting attorney fees to Kors, the Court of Appeal relied principally on the reasoning of *Acosta, supra,* 150 Cal.App.4th 1124. (*Kors, supra,* 195 Cal.App.4th at pp. 74–76.) *Acosta* did *not* involve a fee request under Civil Code section 1717; it involved a request for fees based on specific contractual language, rather than the type of general attorney fee provision typically involved in a request for fees under Civil Code section 1717. (*Acosta, supra,* 150 Cal.App.4th at p. 1132 & fn. 16.) The court in *Kors* concluded the contractual attorney fee provision before it was analogous to the provision at issue in *Acosta* (*Kors,* at pp. 74–76), which is an issue we address in part V. (see *post,* pp. 544–546) of this decision.

arbitrability issue thereby prevailed in the lawsuit itself. The *Turner* court also pointed out that the definition of prevailing party was different at the time *Lachkar* was decided, although *Turner* did not suggest that the change meant that there could be multiple prevailing parties on a single contract in a single lawsuit. (*Turner, supra,* 175 Cal.App.4th at p. 984, fn. 5.) In *Kors*, the court quoted the relevant language in *Turner*: "As pointed out in *Turner*, '*Lachkar* was decided under an earlier version of [Civil Code] section 1717, under which the "prevailing party" was defined as, with certain exceptions, "the party who is entitled to recover costs of suit." [Citations.] [Civil Code] section 1717, subdivision (b)(1) now defines "the party prevailing on the contract" as "the party who recovered a greater relief in *the action on the contract*." . . . This language suggests that where, as here, there is a discrete action "on the contract," attorney fees are available to the party who achieved greater relief in that action.' " (*Kors, supra,* 195 Cal.App.4th at p. 79, quoting *Turner*, at p. 984, fn. 5.) In the procedural context of *Kors*, the implication of the quotation seems to be that a petition to compel arbitration filed in a pending lawsuit constitutes a "discrete action" providing a basis for a Civil Code section 1717 attorney fee award, even though that could result in multiple prevailing parties on one contract in a given lawsuit. Neither the legislative history nor *Turner* supports that interpretation of Civil Code section 1717.

### D. *The Distinctive Characteristics of Petitions to Compel Arbitration Do Not Justify a Fee Award Under Civil Code Section 1717*

We recognize there are arguments for treating attorney fee requests related to petitions to compel arbitration differently from attorney fee requests related to other proceedings. First, a petition to compel arbitration filed in a pending lawsuit is typically a preliminary and analytically distinct proceeding in the lawsuit, and an order denying such a petition is separately appealable (§ 1294, subd. (a)). Second, were it not for the existence of an ongoing action, the party seeking to enforce an agreement to arbitrate would have been able to file an independent petition to compel arbitration under section 1281.2, which would have been a discrete action under *Otay* and *Turner*. The provision requiring that the petition be filed in the ongoing action, section 1292.4, is a venue statute that does not change the fundamentally distinct nature of the petition as a suit in equity to compel specific performance of a contract. (*Rosenthal, supra,* 14 Cal.4th at p. 411; *Brock, supra,* 10 Cal.App.4th at p. 1799, fn. 7; see also *Metis, supra,* 200 Cal.App.4th at p. 688.)

However, we do not believe those distinctions are sufficient to justify treating a petition to compel arbitration filed in a pending lawsuit as a *distinct action on the contract* under Civil Code section 1717. First, even though a ruling on a petition to compel is appealable, had the Legislature intended to

authorize a fee award in that context, it could have done so expressly. For example, the anti-SLAPP[17] statute, section 425.16, provides both that orders on special motions to strike are appealable (§ 425.16, subd. (i)) *and* that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs" and that prevailing plaintiffs shall be awarded fees if the motion was frivolous or solely intended to cause unnecessary delay (§ 425.16, subd. (c)(1)). The Legislature made no similar allowance for fees in providing that an order on a petition to compel filed in a pending action is appealable, and, for the reasons explained previously, the legislative history to Civil Code section 1717 does not support a separate fee award for prevailing on such a petition where there are other contract claims in the case.

Second, it is hardly unique that a petition to compel arbitration, though independent of the other contract claims in a lawsuit, must be filed in that suit. Under the compulsory cross-complaint rule, a defendant must assert in a cross-complaint all claims that arise "out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (§ 426.10, subd. (c); see § 426.30, subd. (a) [related causes of action not alleged in cross-complaint are waived]; see also *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 959–960 [102 Cal.Rptr.3d 343] (*Align Technology*).) In the breach of contract context, the rule means any claims the defendant has against the plaintiff based on the same contract generally must be asserted in a cross-complaint, even if the claims are unrelated to the specific breach or breaches that underlie the plaintiff's complaint. (*Align Technology*, at p. 962.) And, as explained below (pt. III., *post*), a court may not award fees under Civil Code section 1717 to one party for prevailing on a complaint and another for prevailing on a cross-complaint arising under the same contract. Accordingly, although fees incurred in proceedings on a petition to compel arbitration filed in a pending lawsuit may perhaps be more easily apportioned than fees incurred in litigating a cross-complaint, the independent nature of the claim to enforce an arbitration agreement is not a distinction that justifies an attorney fee award.

█ In summary, although there may be equitable considerations in a particular case that appear to justify a fee award for prevailing on a petition to compel arbitration, those considerations do not provide a basis for an award contrary to the language of and legislative intent underlying Civil Code section 1717.[18]

---

[17] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 & fn. 1 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

[18] We recognize that in many cases it may seem reasonable that the party who prevails on a petition to compel arbitration should be able to recover attorney fees, even if that party

III. *Cases from Outside the Arbitration Context Support a Conclusion That, Under Civil Code Section 1717, There Can Be Only One Prevailing Party on a Contract in a Given Lawsuit*

 As noted previously, Civil Code section 1717, subdivision (a) authorizes an award of attorney fees "[i]n any action on a contract" to "the party prevailing on the contract" if the contract provides for an award of attorney fees. The critical issue in this case is whether Frog Creek is entitled to fees as "the party who recovered a greater relief in the action on the contract" (Civ. Code, § 1717, subd. (b)(1)) because it prevailed on the first petition to compel arbitration, even though it ultimately lost on the substantive contract claims. Our analysis of the statutory language, legislative history, and cases in the arbitration context suggests that, within a given lawsuit, there can be only one prevailing party entitled to attorney fees as "the party prevailing on the contract." There is also support for this conclusion in cases from outside the arbitration context.

 Perhaps the strongest support for the proposition that "action on a contract" in Civil Code section 1717 refers to the contract claims in the lawsuit as a whole flows from *Hsu, supra,* 9 Cal.4th 863, which made it clear that a single "action" can involve multiple contract "claims." There, the California Supreme Court considered the scope of a trial court's discretion to determine that no party prevailed on the contract. (*Id.* at p. 871.) The court explained that " '[T]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought.' [Citation.] By

---

ultimately loses on the merits of the contractual dispute. It would create no great unfairness or difficulty to apportion fees between the proceedings on the petition to compel and the rest of the action. And, because Frog Creek was awarded fees at the end of the litigation, we are not in this case confronted with a request for interim fees, which could cause some delay and create more opportunity for mischief. Nevertheless, those are policy considerations best left for the Legislature, which has the power to fashion a different rule if it believes the party prevailing on a petition to compel arbitration should be entitled to a fee award on that proceeding alone, regardless of the outcome on the merits.

Notably, we do not believe that the conclusion we reach will result in a "race to the courthouse" between a plaintiff who intends to file a complaint and a defendant who intends to file a petition to compel arbitration. As the statute is interpreted in this case, a defendant would not gain a predictably greater entitlement to fees under Civil Code section 1717 by filing an independent petition. If the defendant prevailed on such a petition, it would not be entitled to an award of fees unless it ultimately prevailed on the merits at the arbitration; the result would be the same if the defendant prevailed on a petition filed in a pending lawsuit. (See pts. II.A. and II.B., *ante.*) If the defendant *lost* on its petition to compel arbitration, it actually would be better off if the petition were filed in a pending lawsuit, because it could still be entitled to fees if it prevailed on the merits. On the other hand, if the defendant ultimately lost on the merits, it would only be entitled to attorney fees for prevailing on an independent petition to compel. Because the rule we adopt does not create a reliable advantage to filing an independent petition, we do not believe it will create an incentive for most defendants to rush to do so.

contrast, when the results of the litigation on the contract claims are *not* mixed . . . a trial court has no discretion to deny attorney fees to the successful litigant. Thus, when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under [Civil Code section] 1717 as a matter of law. [Citations.] Similarly, a plaintiff who obtains all relief requested on the only contract claim in the action must be regarded as the party prevailing on the contract for purposes of attorney fees under [Civil Code] section 1717. [Citations.]" (*Hsu*, at pp. 875–876.)[19] However, when "the results of the litigation are mixed," the trial court must "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Id.* at p. 876.) Finally, "[t]he prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]" (*Ibid.*; see also *Butler-Rupp, supra*, 154 Cal.App.4th at p. 928 ["In cases where [Civ. Code, § 1717's] definition of 'prevailing party' applies, the identification of the party entitled to a fee award must be determined by the final result of the litigation . . . ."]; *Drummond, supra*, 149 Cal.App.4th at p. 51 ["the phrase 'prevailing *on the contract*,' . . . implies a strategic victory at the end of the day, not a tactical victory in a preliminary engagement"].) In *Hsu*, the Supreme Court determined the trial court had no discretion to conclude there was no prevailing party on the contract, because the defendants won on the only contract claim in the lawsuit. (*Hsu*, at p. 876.)

*Hsu* discussed with approval the decision in *Bankes v. Lucas* (1992) 9 Cal.App.4th 365 [11 Cal.Rptr.2d 723] (*Bankes*). There, the court held there was no party prevailing on the contract under Civil Code section 1717 in a lawsuit involving claims by neighboring landowners against each other for breach of covenants, conditions, and restrictions (CC&R's) containing an attorney fee provision, because ultimately no relief was awarded to either party under the CC&R's. (*Bankes*, at pp. 367, 369.) Thus, in *Bankes* there were cross-claims but only one action on the contract with respect to the Civil Code section 1717 prevailing party determination. If each party's claim had constituted an action on the contract, then each party would have been the prevailing party on the other party's claim. *Bankes* supports a conclusion that "action on the contract" refers to the contract claims in the lawsuit as a whole rather than each discrete contractual cause of action or claim that arises in the course of the lawsuit. *Hsu* further emphasized the need to determine who prevailed on the contract as a whole by pointing out in a footnote that a trial

---

[19] This language in *Hsu* is consistent with those cases like *Otay* that award fees to the prevailing party on a petition to arbitrate where that issue is the only contractual claim in the lawsuit.

court could properly award fees to a defendant who prevailed against the complaint but lost on a cross-complaint if the defendant's cross-complaint "was essentially defensive in nature." (*Hsu, supra*, 9 Cal.4th at p. 875, fn. 10.)

Under the *Hsu/Bankes* approach, Frog Creek's lawsuit was the action on the contract for purposes of Civil Code section 1717; Brown's first petition to compel arbitration was a contract-based claim within the larger action and Frog Creek's victory was not a basis for a fee award under Civil Code section 1717. It seems illogical to conclude otherwise, that (as in *Bankes*) a cause of action for breach of contract in a cross-complaint is *not* an "action" under Civil Code section 1717, but a petition to compel arbitration filed in an existing lawsuit is such an "action."

One decision arguably supporting the proposition that Brown's first petition to compel arbitration was an "action" within the meaning of Civil Code section 1717 because it could have been filed as a separate lawsuit is *CDF Firefighters v. Maldonado* (2011) 200 Cal.App.4th 158 [132 Cal.Rptr.3d 544] (*Maldonado*). There, a firefighters' union filed a complaint for breach of contract against two of its former members. (*Id.* at p. 160.) The complaint alleged that Maldonado had breached his contractual relationship with the union by failing to pay fines levied against him. (*Ibid.*) After years of litigation, a $22,790 fine was found to be invalid and Maldonado was granted a partial judgment on the pleadings. (*Id.* at pp. 160–161.) Thereafter, the union dismissed with prejudice its remaining claim against Maldonado, relating to a separate $743 fine. (*Id.* at p. 161.) Subsequently, the union opposed Maldonado's motion for fees under Civil Code section 1717 on the ground that the dismissal of the union's remaining claim for the $743 fine precluded any award of attorney fees, because Civil Code section 1717, subdivision (b)(2) provides that " '[w]here an action has been voluntarily dismissed . . . there shall be no prevailing party for purposes of this section.' " (*Maldonado*, at p. 161.) On appeal, the court held that dismissal of the remaining claim for $743 did not negate Maldonado's prevailing party status on the $22,000 claim that was adjudicated in his favor. (*Id.* at pp. 165–166.) The court noted that the union's complaint stated two separate causes of action that could have been filed as separate lawsuits. (*Ibid.*) The court stated the issue as "whether the voluntary dismissal of one of the separate and distinct contract causes of action bars the recovery of attorney fees on the adjudicated contract cause of action." (*Id.* at p. 165.)

Citing a 1901 California Supreme Court decision,[20] the *Maldonado* court concluded: "[E]ach obligation alleged by [the union], i.e., the $743 fine and the $22,000 fine, is a cause of action and [the union]'s right to enforce each obligation in a judicial proceeding is a separate action. Accordingly, when [the union] voluntarily dismissed its action on the $743 fine, there was no prevailing party on that claim. However, at that time, the action on the $22,000 fine had been finally adjudicated in [Maldonado]'s favor through judgment on the pleadings. Since action is not synonymous with complaint, [the union]'s dismissal of the balance of its complaint, a complaint based on two separate obligations, was not a dismissal of the separate action on the $22,000 fine. Therefore, [Civil Code] section 1717, subdivision (b)(2), does not bar an award of the attorney fees and costs [Maldonado] incurred in defending the action on the $22,000 fine." (*Maldonado, supra*, 200 Cal.App.4th at p. 166; but see *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 597, fn. 3 [113 Cal.Rptr.3d 498, 236 P.3d 346] ["Strictly speaking, the term 'action' is not interchangeable with 'cause of action.' 'While "action" refers to the judicial remedy to enforce an obligation, "cause of action" refers to the obligation itself.' [Citation.]"].)

The *result* in *Maldonado* certainly seems correct. The Legislature could not have intended to preclude an attorney fee award in the circumstances of the case. As *Maldonado* points out, "holding otherwise would not promote the policies behind [Civil Code] section 1717, subdivision (b)(2), of encouraging settlements and discouraging the maintenance of pointless litigation." (*Maldonado, supra*, 200 Cal.App.4th at p. 166.) Under Civil Code section 1717, subdivision (b)(2), a plaintiff should not be able to avoid a fee award by dismissing one of its contractual claims when the defendant has already prevailed on another contractual claim. In such an instance, the entire "action" on the contract has *not* been voluntarily dismissed. If, however, *Maldonado* stands for the proposition that each distinct contractual claim is a separate contract action within the meaning of Civil Code section 1717, such that a trial court must determine which party prevailed on each distinct contractual claim and make various fee awards accordingly, we disagree. That

---

[20] In *Frost v. Witter* (1901) 132 Cal. 421 [64 P. 705] (*Frost*), the Supreme Court defined the terms "cause of action" and "action." In doing so, the court stated that an "action" is not equivalent to a suit: "The . . . term [action] is very commonly confounded with the *suit* . . . in which the action is enforced. But this is not the technical meaning of the term, according to which an action is simply the right or power to enforce an obligation. 'An action is nothing else than the right or power of prosecuting in a judicial proceeding *what is owed to one*,'—which is but to say, an *obligation*. . . . The action therefore springs from the obligation, and hence the 'cause of action' is simply the obligation." (*Id.* at p. 426.) Whatever the significance of the abstract logic in the *Frost* decision, it seems unwise to overly rely on the decision in interpreting Civil Code section 1717 in light of the more recent authority cited previously equating "action" with "suit." (See, e.g., *People v. Yartz* (2005) 37 Cal.4th 529, 536 [36 Cal.Rptr.3d 328, 123 P.3d 604] [quoting § 22 and stating "With respect to civil actions, 'an "action" means the same thing as a "suit." [Citation.]' [Citations.]"].)

approach would be contrary to *Hsu, supra*, 9 Cal.4th 863, and *Bankes, supra*, 9 Cal.App.4th 365, and would place a great burden on the trial courts to partition fees in a lawsuit among various independent contract claims, each of which is technically a separate cause of action.[21]

In conclusion, on the whole, cases from outside the arbitration context support a conclusion that under Civil Code section 1717 there can only be one prevailing party on a given contract in a given lawsuit.

## IV. *The Present Lawsuit Did Not Involve Two Independent Contracts*

■ Where multiple independent contracts are involved in one lawsuit, and each contract provides an independent entitlement to fees, it is necessary to determine the prevailing party under each contract. (*Arntz, supra*, 47 Cal.App.4th at p. 491; *Hunt v. Fahnestock* (1990) 220 Cal.App.3d 628, 632 [269 Cal.Rptr. 614] (*Hunt*).) But each contract still supports only one fee award in a given lawsuit. Frog Creek relies on *Arntz* and *Hunt* and argues that two contracts are at issue in the present case, because there is a significant difference between its version and Brown's version. But Frog Creek's reliance on *Hunt* and *Arntz* is misplaced, because those cases involved "independent, unrelated contracts." (*Hunt*, at p. 632.) As *Arntz* held, "When an action involves multiple, *independent* contracts, each of which provides for attorney fees, the prevailing party for purposes of Civil Code section 1717 must be determined as to each contract regardless of who prevails in the overall action. [Citation.]" (*Arntz*, at p. 491, italics added; see also 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 198, pp. 751–752.) For example, the *Hunt* court emphasized that "the action and cross-action involved three independent, unrelated contracts, and a different party prevailed upon each." (*Hunt*, at p. 632; see also *Arntz*, at p. 490 ["The indemnity agreements and Collateral Agreement are separate and cannot . . . be read as a single contract."].) In the present case, there were not two independent, unrelated agreements, each relating to a different aspect of the project. Instead, there was one agreement covering the entire project and relationship between Brown and Frog Creek. The parties disputed which was the binding version of the Contract, the one with Frog Creek's interlineations or the one without the interlineations. Accordingly, the trial court's fee award cannot be upheld on the basis that Frog Creek prevailed on one contract and Brown prevailed on another.

---

[21] Of course, the trial court may need to apportion fees between contract and noncontract claims. (*Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 405 [112 Cal.Rptr.2d 99] ["if an action asserts both contract and noncontract claims, Civil Code section 1717 applies only to attorney fees incurred to litigate the contract claims" (fn. omitted)]; see also *Santisas, supra*, 17 Cal.4th at p. 615; *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [158 Cal.Rptr. 1, 599 P.2d 83].)

V. *We Reject the Rationale of the* Acosta *Decision That Specific Contract Language May Justify a Separate Attorney Fee Award*

In *Acosta, supra,* 150 Cal.App.4th 1124, an "Occupancy Agreement" between the plaintiff and one defendant (Kerrigan), provided that the exclusive remedy for any disputes regarding any aspect of the agreement was arbitration. There were two attorney fee provisions in the relevant contract. First, there was a "provision stating the prevailing party at an arbitration concerning a dispute arising under the agreement is entitled to recover attorney fees." (*Id.* at p. 1126, fn. 2.) Second, the contract's "arbitration clause" stated, " 'Should any party to this Agreement hereafter institute any legal action or administrative proceeding against the other by any method other than said arbitration, the responding party shall be entitled to recover from the initiating party all damages, costs, expenses, and attorneys' fees incurred as a result of such action.' " (*Id.* at p. 1126.) The plaintiff in *Acosta* filed a complaint for writ of possession, and the defendants successfully moved to compel arbitration and obtained a fee award. (*Id.* at pp. 1126–1127.)

On appeal, *Acosta* concluded that attorney fees incurred in connection with the petition to compel arbitration could properly be awarded before the arbitration took place, although it was an "interim" stage of the overall proceedings. (*Acosta, supra,* 150 Cal.App.4th at p. 1132.) The court determined that the right to attorney fees arose from the specific provision in the arbitration clause providing for an entitlement to fees incurred due to the initiation of any proceeding other than arbitration. Further, the court concluded there was no reason Kerrigan should have to wait until the end of the arbitration to receive those fees. (*Ibid.*) Critically, the court emphasized, "Kerrigan is not attempting to recover attorney fees under a provision permitting an award of fees to the party prevailing on the merits of a claim arising under the Occupancy Agreement. Rather, he is seeking fees incurred while enforcing an independent provision of the contract, fees to which he is entitled even if he loses the case on the merits in the arbitration." (*Ibid.,* fn. omitted.) The court contrasted the case with *Lachkar, supra,* 182 Cal.App.3d 641, which involved a fee award under Civil Code section 1717. (*Acosta,* at p. 1132, fn. 16.) The *Acosta* court did not conclude Kerrigan was entitled to a fee award under Civil Code section 1717.

 *Acosta*'s rationale appears to be contrary to the proposition that Civil Code section 1717 alone determines a party's entitlement to attorney fees under a contractual fee provision. (*Santisas, supra,* 17 Cal.4th at p. 616.) Under *Acosta,* it would seem that parties to a contract could provide for an attorney fee award in *any* specified circumstance, as long as the parties did so with highly specific contractual language. But in *Santisas,* the California Supreme Court *rejected* "a construction of [Civil Code] section 1717 under

which that provision operates only to *permit* recovery of attorney fees that would not otherwise be recoverable as a matter of contract law and never to *bar* recovery of attorney fees that would otherwise be recoverable as a matter of contract law." (*Santisas*, at p. 616.) The court explained that the legislative history of Civil Code section 1717 "generally reflects a legislative intent to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions . . . . A holding that in contract actions there is still a separate contractual right to recover fees that is not governed by [Civil Code] section 1717 would be contrary to this legislative intent." (*Santisas*, at p. 616; see *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 372–373 [138 Cal.Rptr.3d 820] ["[W]hile the availability of an award of contractual attorney fees is created by the contract [citation], the specific language of the contract does not necessarily govern the award. . . . Parties to a contract cannot, for example, enforce a definition of 'prevailing party' different from that provided in Civil Code section 1717. [Citation.]") Further, one reason the California Judges Association proposed the changes that were ultimately made to Civil Code section 1717 in 1986 was to "eliminate confusion" and "simplify" the process for cost awards, "thereby relieving court congestion and easing judicial workload." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 654, as amended Apr. 5, 1985, p. 1; Assem. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 654, as amended July 8, 1986, p. 2.) *Acosta* threatens to significantly undermine that policy.

*Kors* demonstrates a second problem with *Acosta*: once the door is opened to creating a broader right to contractual fees than Civil Code section 1717 allows, it will be difficult to confine that right to the specific, narrow circumstances in *Acosta*. In *Kors*, there was only a general contractual attorney fee provision stating, " '[t]he prevailing party in any arbitration or litigation pertaining to [any contract] dispute may recover the full value of attorney's fees incurred in any dispute over enforcement of this agreement, even if any party hereto represents itself.' " (*Kors, supra*, 195 Cal.App.4th at p. 73.) That provision lacked the specificity of the independent fee provision contained in the arbitration clause in *Acosta*. *Kors*, however, reasoned that the provision before it "amount[ed] to the same thing," because the *Kors* provision authorized fees " 'incurred *in any dispute over enforcement of this agreement.*' " (*Kors*, at p. 76, italics added.) In concluding that a general contractual attorney fee provision is equivalent to the specific and independent provision in *Acosta*, the *Kors* decision significantly expands the reach of *Acosta*. *Kors*, for example, would seem to justify awarding fees to a party who prevails on a contract-based motion to change venue, even if that party ultimately loses the case at trial. Indeed, pursuant to *Kors*'s reasoning,

a party who succeeded on *any* dispute related to a contract's enforcement could claim fees, even if that party was not the prevailing party at trial.[22]

In sum, the rationale in *Acosta* violates the policy behind Civil Code section 1717 articulated in *Santisas*. And the *Kors* extension of the *Acosta* rationale to a general contractual attorney fee provision could render irrelevant the Civil Code section 1717 definition of "party prevailing on the contract." Even if we agreed with *Acosta*, which we do not, we would decline to apply it here.

### VI. *Brown's Request for Attorney Fees on the First Petition to Compel and Appeal*

In the present case, denial of Brown's first petition to compel arbitration did not resolve the parties' contract dispute; instead, the merits of that dispute remained before the court in Frog Creek's complaint and Brown's cross-complaint, both of which alleged claims for breach of contract. The merits of the parties' claims under the Contract were resolved in Brown's favor by the arbitration panel following the second petition to compel arbitration. For the reasons explained in this decision, the trial court erred in awarding Frog Creek attorney fees under Civil Code section 1717 for prevailing on the first petition to compel arbitration because Brown prevailed on the contract action overall; the Legislature did not intend to authorize multiple attorney fees awards to multiple prevailing parties on a single contract in a given lawsuit. We reverse the trial court's award of attorney fees to Frog Creek.

Brown also contends *it* is entitled to an award of attorney fees on the first petition to compel arbitration because it is the prevailing party in the contract action, even though it did not prevail on that petition. Brown is correct that a party who ultimately prevails on a contract action is entitled to all of its fees, including fees incurred during the lawsuit in proceedings where it did not prevail. (See *Mustachio v. Great Western Bank* (1996) 48 Cal.App.4th 1145, 1150–1151 [56 Cal.Rptr.2d 33] (*Mustachio*) [plaintiff entitled to attorney fees on appeal that resulted in adverse modification of judgment because plaintiff prevailed on contract action overall]; *Presley of*

---

[22] The *Turner* court also cited *Acosta* with approval, stating, "Similarly here, the agreement contained a provision contemplating the possibility of a legal action to enforce the agreement, and authorizing an award of attorney fees 'incurred *in connection with such action*.' " (*Turner, supra,* 175 Cal.App.4th at pp. 981–982.) However, *Turner's* holding is ultimately based on the fact that "The fees at issue were incurred in connection with an independent complaint for declaratory and injunctive relief. As in *Otay*, the only issue before the court—whether the arbitration should be allowed to proceed—was resolved in defendants' favor in this discrete legal proceeding." (*Turner*, at p. 983.) Accordingly, the *Turner* court did not hold that a fee award would be appropriate solely for prevailing on a petition to compel arbitration where other contract claims are involved in the same lawsuit.

*Southern California v. Whelan* (1983) 146 Cal.App.3d 959, 963 [196 Cal.Rptr. 1] (*Presley*) [plaintiff not entitled to attorney fees for prevailing on appeal from grant of summary judgment motion because defendant would be entitled to its fees for that appeal if it ultimately prevailed]; see also *Wood v. Santa Monica Escrow Co.* (2009) 176 Cal.App.4th 802, 807–808 [97 Cal.Rptr.3d 909] [discussing *Mustachio* and *Presley*].) Therefore, Brown, as the prevailing party on the Contract, is entitled to attorney fees for the proceedings on the first petition to compel arbitration.

 Civil Code section 1717, subdivision (a) provides that "[r]easonable attorney's fees shall be fixed by the court . . . ." And, of course, "the trial court has broad authority to determine the amount of a reasonable fee. [Citations.]" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511]; see also *Peak-Las Positas Partners v. Bollag* (2009) 172 Cal.App.4th 101, 114 [90 Cal.Rptr.3d 775] ["[t]he amount of attorney's fees is within the sound discretion of the trial court"].) Moreover, the trial court has "the discretion to exclude from a fee award the fees incurred by a prevailing party in making frivolous procedural maneuvers, the primary concern in setting rules for attorney fee awards must be the encouragement of efficient litigation." (*Presley, supra,* 146 Cal.App.3d at p. 963; see also *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770 [75 Cal.Rptr.3d 902]; *Mustachio, supra,* 48 Cal.App.4th at p. 1151.) Accordingly, we will remand the instant matter to the trial court with instructions to exercise its discretion in determining a reasonable fee award for Brown for the proceedings on the first petition to compel arbitration.[23]

 Finally, Brown requests an award of attorney fees on appeal. "Fees, if recoverable at all either by statute or the parties' agreement, are available for services at trial and on appeal." (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1097 [74 Cal.Rptr.3d 235].) Thus, we also direct the trial court on remand to determine a reasonable award to Brown for his attorney fees on appeal.

## DISPOSITION

The trial court's order on attorney fees is reversed to the extent it awards Frog Creek attorney fees of $125,000 in connection with Brown's first petition to compel arbitration. This matter is remanded with instructions that

---

[23] We reject Brown's contention that the trial court has already exercised its discretion regarding the reasonableness of Brown's request for fees on the first petition to compel.

the trial court award Brown reasonable attorney fees on its first petition to compel arbitration and on this appeal. Costs on appeal are awarded to Brown.

Needham, J., and Bruiniers, J., concurred.